*THE STATE vs. WRIGHT'S ADMINISTRATORS.*

Since the new code, the state has no privilege on the estate of an insolvent sheriff, for taxes collected by him and unaccounted for.

APPEAL from the court of probates of the parish of Rapides.

MATHEWS, J. delivered the opinion of the court. This case comes up on an appeal taken on the part of the state, as opposing creditor to the homologation of a tableau of distribution, filed by the administrators of the succession of the intestate, wherein the state was refused a privilege and preference or priority over other creditor, for an amount claimed from said succession, as being due by the deceased, on account of his defalcation to the

government, in relation to money by him collected, as sheriff of the parish aforesaid, on account of taxes due to the state.

The only question presented for our consideration, relates to the preference or priority secured to the state by law, on the funds of insolvents who may be debtors to the public.

It is not contended, by the counsel for the administrators or mass of creditors, that the preference now claimed, was not accorded by our laws before the promulgation of the Louisiana Code, but that this latter law has abrogated all laws which previously existed, in relation to the right of the state, to privilege, preference, priority, or mortgage on the estates of its debtors, in cases of insolvency. We here assume as a fact not denied, that the succession of Wright is insolvent, or at least, that it is in a course of administration as such.

The cause must be decided according to the laws, as they stood at the time the sheriff made his bond, which was in 1826, after the promulgation of our new civil code. Previous to that event, the privilege and preference, or priority, such as the counsel for the state now contends for, was most explicitly granted

by an act of the legislature, approved on the 4th of January, 1814. See acts of that year. Before this law was enacted, a legal or tacit mortgage existed on the property of public officers, and other accountable persons, in favor of the territory, and at the charge of government, accrued to the state. See *L. Code, p. 456, art. 25.* As this species of mortgage is exclusively the creature of law, it can have no existence, except by express legal provisions. We are now to inquire, whether both or either of these laws, have been abrogated by the provisions of the L. Code. In treating on the subject of legal mortgages, it is expressly declared, that none shall exist, except in the cases determined by that code. See *Lou. Code, art.* 3280. An enumeration of the rights and credits on which legal mortgages are founded, immediately follows this article, amongst which those of the state do not appear; and consequently, the provisions of the old code, relating to the tacit or legal mortgage of the state, must be considered as repealed and abrogated. But, in our opinion, a legal mortgage may be considered as a thing distinct from privilege, preference and priority, although it may, in some instances, em-

brace them. In other words, that this species of mortgage is not necessary to support the latter rights, but they may exist without its aid.

This view of the cause, leads us to enquire into the effect, which the provisions of the new code may have had on the rights of the state, as secured by the act of 1814. On examination, they are found to be very similar, in relation, privilege and preference, to those on the subject of legal mortgages. By the art. 3150, the property of a debtor is considered as a common pledge of all his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some *lawful* causes of preference.

The article immediately succeeding states, such causes to be privileges and mortgages. And the next declares, that privilege can be claimed, only for those debts to which it is expressly granted in this code.

No privilege appears to be granted expressly by the code to the state, and it seems to be excluded, by this provision, from any which might have existed previously. The repealing clause, found in art. 3821, adds to the force of the restrictive article just cited. It sweeps

West'n. District.
October, 1829.

THE STATE
vs.
WRIGHT'S ADS.

from our jurisprudence all laws which relate to any case, especially provided for in the code. The case of privilege and preference is provided for by the code, and consequently all previous laws on that subject, are repealed and abrogated. Hence, we conclude, that the act of 1814 is repealed, and hence, that the state is deprived of her legal mortgage, and of her privilege and preference on the property of her debtors, as secured by laws in force prior to the promulgation of the new code. As argued by the state's counsel, it can hardly be believed, that the legislature intended, by the adoption of the code and the repealing clause annexed to it, to abolish the preference, which the government had secured to itself, on the property of its debtors. We are unable to discover the wisdom of such legislation, which seems to us te be contrary to that of all other states and governments. *Sed ita lex*, plainly expressed, and we as judges, are bound to obey it.

It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be affirmed.

*Wilson* for the state, *Boyce* for defendants.